**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL ABNER et al., | CIVIL ACTION |
| Plaintiffs, | No. 2:24-cv-01129-RJC |
| v. | |
| FEDERAL EXPRESS CORPORATION, successor by merger to FEDEX GROUND PACKAGE SYSTEM, INC., | |
| Defendant. | |

**FEDERAL EXPRESS CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

FACTUAL AND PROCEDURAL BACKGROUND .................................................................3

I.      THE *CLAIBORNE* ACTION ......................................................................................3

        A.      The *Claiborne* Action Has Been Riddled with Serious Discovery Issues .............3

        B.      LLR Voluntarily Moves for Decertification........................................................7

II.     THE *ABNER* ACTION ............................................................................................7

ARGUMENT ...................................................................................................................9

I.      LLR HAS VIOLATED RULE 11(b)(1)........................................................................10

        A.      There Is No Indication These Are Valid Plaintiffs .............................................11

        B.      LLR Knows It Cannot Get Each Plaintiff to Participate in this Case as
                Plaintiffs Are Required to Do ..........................................................................14

II.     LLR HAS VIOLATED RULE 11(b)(2)-(3) ................................................................16

        A.      LLR Has Included Two of the 12 Named Plaintiffs in *Claiborne* ......................17

        B.      LLR Has Included Plaintiffs Whose Claims Were Previously Dismissed
                With Prejudice ..............................................................................................18

        C.      LLR Has Included a Plaintiff Who Admittedly Never Drove Light
                Vehicles and Who Previously Litigated, and Lost, His Claims Against
                FedEx in Federal Court in Colorado..................................................................19

        D.      LLR Has Included 228 New Plaintiffs in the Case, Many of Whose Claims
                Are Time Barred on the Face of the Complaint ..................................................20

        E.      LLR Has Not Alleged Even Basic Facts for Many of the Plaintiffs' Claims .......21

        F.      LLR Has Not Requested Pay Documents from Plaintiffs' Employers................22

III.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AND LLR SHOULD
        BE REQUIRED TO CONDUCT A REASONABLE INQUIRY INTO EACH
        PLAINTIFF'S CLAIMS BEFORE REFILING............................................................23

CONCLUSION..............................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Alleyne v. Federal Express*,
    No. 3:24-cv-12031-KAR (D. Mass.)......................................................8

*Atwood v. Federal Express*,
    No. 2:24-cv-01127-RJC (W.D. Pa.)......................................................7

*Brannon v. Federal Express*,
    No. 2:24-cv-01128-RJC (W.D. Pa.)......................................................8

*Brown v. M/I Homes of Orlando, LLC*,
    No. 608-CV-528-ORL-28KRS, 2008 WL 5099695
    (M.D. Fla. Nov. 26, 2008) ................................................................22

*Clemmons v. Wells Fargo Bank, N.A.*,
    No. 14–4020–JTM, 2015 WL 1242651
    (D. Kan. Mar. 18, 2015) ..................................................................16

*Del Giudice v. S.A.C. Cap. Mgmt., LLC*,
    No. CIV. A. 06-1413 SRC, 2009 WL 424368
    (D.N.J. Feb. 19, 2009) ....................................................................24

*Doyle v. Federal Express*,
    No. 3:24-cv-12030-KAR (D. Mass.)......................................................8

*Elkadrawy v. Vanguard Grp., Inc.*,
    584 F.3d 169 (3d Cir. 2009) ............................................................20

*Ellis v. Beemiller, Inc.*,
    287 F.R.D. 326 (W.D. Pa. 2012)........................................................22

*Est. of Hennis v. Balicki*,
    No. CV 16-4216 (JBS-AMD), 2018 WL 2230543
    (D.N.J. May 16, 2018)......................................................................24

*Estrada v. FTS USA, LLC*,
    No. 14-23388-CIV, 2018 WL 1836007
    (S.D. Fla. Jan. 23, 2018),
    *r. & r. adopted*, No. 14-CV-23388, 2018 WL 1811907
    (S.D. Fla. Mar. 16, 2018),
    *aff'd*, 810 F. App'x 743 (11th Cir. 2020) ..........................................23

*Garr v. U.S. Healthcare, Inc.*,
    22 F.3d 1274 (3d Cir. 1994) ..........................................................9, 24

*In re Engle Cases*,
    283 F. Supp. 3d 1174 (M.D. Fla. 2017) ........................................... 1, 9, 11, 15, 16, 17, 22, 25

*In re Engle Cases*,
    767 F.3d 1082 (11th Cir. 2014)................................................................................... 13, 16, 25

*Jimenez v. Madison Area Tech. Coll.*,
    321 F.3d 652 (7th Cir. 2003) .................................................................................................24

*Joseph v. Linehaul Logistics, Inc.*,
    291 F.R.D. 511 (D. Mont. 2013).............................................................................................16

*Lieb v. Topstone Indus., Inc.*,
    788 F.2d 151 (3d Cir. 1986) ...................................................................................................10

*Marina Mgmt. Servs., Inc. v. Vessel My Girls*,
    202 F.3d 315 (D.C. Cir. 2000) ...............................................................................................24

*McCabe v. Lifetime Ent. Servs., LLC*,
    No. 17-CV-908-ERK-SJB, 2018 WL 1521860
    (E.D.N.Y. Jan. 4, 2018) ..........................................................................................................21

*Miller v. Bridgeport Bd. of Educ.*,
    No. 3:12-CV-01287 JAM, 2014 WL 3738057
    (D. Conn. July 30, 2014) ........................................................................................................24

*Ruffin v. ITT Cont'l Baking Co.*,
    636 F. Supp. 857 (N.D. Miss. 1986) ......................................................................................17

*Soo San Choi v. D'Appolonia*,
    252 F.R.D. 266 (W.D. Pa. 2008)....................................................................................... 10, 24

**STATUTES**

29 U.S.C. § 255....................................................................................................................................20

**RULES**

Fed. R. Civ. P. 11 ..................................................................................................................... 1, 10, 15

LCvR 40 ..................................................................................................................................................3

Lichten & Liss-Riordan, P.C. ("LLR") certified to the best of its "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the claims in this case were "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that the claims in the original and amended complaints were "warranted by existing law" and have, or will have, sufficient "evidentiary support." *See* Fed. R. Civ. P. 11(b). Contrary to that certification, LLR failed to conduct any inquiry, let alone a reasonable one, before filing this case naming 11,643 Plaintiffs. It is key to recognize that

> the volume of claims does not render the fundamental precepts of lawyer-client responsibilities, vis-à-vis the client and vis-à-vis the Court as procedural niceties. . . . The solution to managing these types of mass actions is surely not that the standard of care diminishes as the number of cases grows. . . . Thus, this Court rejects the notion that the volume of claims somehow lessens an attorney's obligations under Rule 11. Accepting that proposition yields the perverse implication that a lawyer could overwhelm defendants and the court with a tidal wave of lawsuits, and at the same time bear diminished responsibility for filing claim that lack factual support. That simply cannot be. Rule 11 imposes the same obligations on a lawyer regardless of whether he files one complaint or 10,000 complaints.

*In re Engle Cases*, 283 F. Supp. 3d 1174, 1221 (M.D. Fla. 2017) (internal citations, quotation marks, and emphasis omitted). By filing this case, LLR has violated Rule 11 in several ways.

First, LLR's amended complaint violates Rule 11(b)(1) for two independent reasons. The first is that LLR cannot show that the over 11,000 Plaintiffs are real Plaintiffs. Before filing this case, LLR was litigating the conditionally-certified *Claiborne* action of over 30,000 opt-ins. After it became clear to LLR that decertification was likely, due to a decision in a different collective LLR filed in the District of Massachusetts,[1] LLR voluntarily decertified the collective

---

[1] This decision was just the straw that broke the camel's back. Eight other courts across the country had already refused to certify FLSA collectives and Rule 23 actions against FedEx.

in *Claiborne* and asked for additional tolling of 120 days. Rather than using that time to investigate the claims of the former opt-ins and determine whether they could pursue their claims individually, LLR simply sued on behalf of as many of the opt-ins (and some that were never opt-ins) they could muster with a simplistic, misleading electronic outreach.

LLR did not bother to communicate to these former opt-ins the significant difference between pursuing a case individually and joining a collective. Unlike before, where most of these Plaintiffs were only passive participants—they are now expected to fully participate in discovery, including sitting for depositions, and risking exposure to costs awards. Because LLR didn't communicate these differences, it didn't get informed consent from the Plaintiffs to change their status and proceed with the present lawsuit.

The lack of informed consent leads to the second way in which LLR violated Rule 11 (b)(1): there is no reason to believe that LLR will be able to marshal the extensive discovery necessary in this case. Over the course of four years in *Claiborne*, LLR was unable to meet discovery obligations for even the several dozen pre-notice opt-ins, named Plaintiffs, and deposed opt-ins, let alone the over 1,700 discovery opt-ins. LLR admitted to this Court that it was struggling to meet its discovery obligations as to the 50 discovery opt-ins selected in the *Roy* litigation, No. 3:17-cv-30116-KAR (D. Mass.). According to LLR, this problem wasn't just a matter of capacity. It represented to the Court that obtaining discovery from the opt-ins would take years because many of them would rather <u>drop out of the case entirely</u> than engage in the discovery process (even as limited as it was for opt-ins). Despite this representation, LLR has moved forward with a complaint naming over 11,000 individuals, knowing full well it will not be able to ensure <u>the required Plaintiff-level participation</u> from them. The reason for this strategy is clear—LLR wanted to increase the costs of litigation and harass FedEx into settlement.

Second, LLR's amended complaint violates Rule 11(b)(2)-(3). Even a preliminary investigation of a small sampling of Plaintiffs shows that LLR has not done any investigation into the factual or legal viability of its clients' claims. Even in its amended complaint, after dismissing 298 of the initial 11,941 Plaintiffs, LLR continues to include individuals that are named Plaintiffs remaining in *Claiborne*, dismissed with prejudice from *Claiborne* for various reasons, individuals that were not previous *Claiborne* opt-ins at all and therefore are time barred on the face of the complaint, and individuals such as Andrew Bachanov, who fully litigated and lost his overtime claims against FedEx in Colorado federal court while being represented by LLR's co-counsel in *Claiborne*, Brian Gonzales. FedEx should not be required to respond to a complaint that is indisputably in violation of Rule 11.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    THE *CLAIBORNE* ACTION

In 2018, LLR filed an FLSA action against FedEx in this court in *Claiborne v. FedEx Ground Package System, Inc.*, No. 2:18-cv-01698-RJC (W.D. Pa.), ("*Claiborne*")[2]. Magistrate Judge Dodge conditionally certified the collective on September 30, 2019, resulting in over 30,000 individuals opting into the case. (*See id.*, ECF No. 107.)

#### A.    The *Claiborne* Action Has Been Riddled with Serious Discovery Issues

In 2021, the Court held that FedEx was entitled to seek written discovery, in the form of questionnaires, from 1,748 opt-ins. (*Id.*, ECF Nos. 293 at 19 (Court ordering discovery as to

---

[2] FedEx notes that this case, *Abner*, is pending before the Honorable Judge Colville based on Plaintiffs' designation that *Abner* is related to *Claiborne*. (*See* Compl., ECF No. 1.) By filing this motion, FedEx does not concede relatedness and maintains that this action neither involves the same issue of fact nor grows out of the same transaction as the *Claiborne* action. *See* LCvR 40(D)(2). However, given this Court's history with the *Claiborne* case in terms of collective discovery, it seems appropriate that Judge Colville decide this motion for the convenience of the parties and to save judicial resources.

1,650 opt-ins), 322 ¶ 9 (parties' stipulation to a total of 1,748 discovery opt-ins due to Plaintiffs'
late discovery of additional opt-in forms never filed), 324 (Court granting Plaintiffs' motion at
ECF No. 322).)

Throughout the next three years, up until LLR's voluntary decertification of the
collective, the *Claiborne* litigation was riddled with discovery difficulties. FedEx had to send
questionnaires to 758 alternate opt-ins after not receiving responses from the initial set, and was
preparing to issue another several hundred. (Ex. A, J. Scott Decl. ¶¶ 9-10.) In several hearings
before the Court in 2021 and 2022, Ms. Liss-Riordan said:

- When addressing the number of opt-ins that should be subject to the limited questionnaire discovery: "Inevitably a lot of people who were chosen to participate in discovery simply won't do it. A lot of people opted in. If they're told that they need to take further action in the case, a lot of them just won't do it." (Hr'g Tr. 6:4-7, Jan. 27, 2021, excerpts attached at Ex. B.)

- "…taking discovery from thousands of people would obviously be extremely time-consuming and that might make it unclear when we would ever see a trial in this matter." (*Id.* 9:5-7.)

- "As a practical matter, at a trial you are not going to have thousands of opt-ins testifying at a trial. You are not going to see hundreds of opt-ins testify at a trial. Even for very large collective actions at most the number of opt-ins who testify have been more in the dozens or tens or even less than that." (*Id.* 9:12-17.)

- Speaking to this Court regarding discovery struggles in the *Roy* case: "So in that case where we have about 500 some odd opt-ins, the Court ordered this written discovery for 50. We have been going through this process of doing the discovery for 50. So we have used FedEx's questionnaire on the 50. <u>I will say it's been very hard, we have been working very hard, our associates and our paralegals have been working very hard on responding to discovery even for 50, and it has been very difficult.</u> Because it's just hard to get people who opted into a case who understood that somebody else was going to be prosecuting the case for them to actually engage in discovery." (*Id.* 11:12-22 (emphasis added).)

- "Ms. Scott's argument again about how you need to look much more closely at everyone's situation regarding whether or not they were paid overtime or how they should have been paid overtime, I mean, if you are going to get to that level of detail, it's just a different question than what we are looking at at the outset. Even FedEx's proposal of taking discovery from three or four or six or seven thousand drivers won't get the answer for them for everyone." (*Id.* 28:20-29:3.)

- "On the questionnaires, my understanding of it is that the reason for or a reason for so many to be ordered is we know -- I mean, we've always known that we're not going to be able to get responses from all of our clients. . . So I'm sure if we keep working on this, we should be able to get to 500 responses. I don't think we're ever going to get to, say, 1650 complete responses. That would probably take years." (Hr'g Tr. 18:16-19:2, Dec. 15, 2021, excerpts attached at Ex. C.)

- "What I was meaning when I said this would take years is it would take years -- we know from doing this and we know from the responses we've gotten from the first 500 is that we're not going to get 100 percent. We've always known we're not going to get 100 percent. It looks like we're running at about 40 percent." (*Id.* 25:23-26:4.)

- "But my point was only that I had understood that part of Your Honor's reasoning in setting these numbers is that this would lead FedEx to get responses from a fulsome amount of the opt-in collective. I didn't understand the order to be that we're going to keep doing discovery until plaintiffs have produced a full 1650 responses, because that I do think would take years. And for reasons we argued to you before and we're not going to reargue now, we don't think that's necessary for FedEx to be able to defend itself in the case." (*Id.* 26:11-20.)

- "I mean the truth of it is is that when you have these cases, yes, a lot of people don't want to participate. It's hard to get them to participate." (Hr'g Tr. 17:25-18:2, Feb. 10, 2022, excerpts attached at Ex. D.)

- "So, yeah, if we were going to wait to get absolute complete responses from 1,650 people, yes, I think that will take years. And I don't think perfection is ever sought or obtainable in this kind of situation." (*Id.* 19:21-24.)

By the time LLR asked to decertify the collective in April 2024, FedEx had received only 1,044 "complete" questionnaire responses[3] from the total 2,567 discovery questionnaires it issued. (Scott Decl. ¶ 11.) Even where FedEx did receive responses, even partial ones, those responses took months or years to receive. (*Id.* ¶ 12.) Approximately 1,343 opt-ins took more than six months to respond, many of which were incomplete despite the delay. (*Id.*) As just two

---

[3] The use of the word "complete" for these purposes simply means the person filled out the questionnaire and produced documents they said they had, if any; however, most said they didn't have any documents anymore and therefore produced little to nothing. (Scott Decl. ¶ 11.)

examples, Calvin Banks and Roosevelt Gulley Jr., two opt-ins that are now named Plaintiffs in this action, took over two-and-a-half years to respond to their questionnaires. (*Id.*)

Named plaintiffs' discovery was equally deficient—as of today, FedEx still does not have complete discovery from any of the 12 plaintiffs, some of whom have testified to disposing of relevant documents even after joining the case, and some of whom are still driving today yet doing nothing to save and produce, for example, their time records. (*See, e.g.*, Deppiesse Dep. 219:18-25, excerpts attached at Ex. E (no one told him to preserve documents and he did not know he had the duty to do so); Schoolfield Suppl. Resp. to FedEx's 1st Set of Interrogs., excerpts attached at Ex. F, Resp. No. 13 ("Plaintiff states that at Truck Dynasty, he is required to track his hours by logging in and out each day to a system called Homebase.").)

Also, the parties and the Court saw that even from the relatively small sampling that participated in discovery, though they all had signed a form swearing under penalty of perjury that they had driven light vehicles, worked overtime in them, and had not been paid for that overtime, that turned out not to be true for many of them, including two named Plaintiffs that LLR added to the complaint in 2021. (*See, e.g.*, *Claiborne* ECF No. 323, Pls.' Mem. in Opp'n to Def's Mot. for Summ. J. on All Claims Asserted by Pls.' D. Russell, K. Burton, and T. Deppiesse, at 1-2 (in response to FedEx's summary judgment motion based on Plaintiffs Russell and Burton not having driven light vehicles, Plaintiffs indicating they "are withdrawing their overtime claims"); *id.*, ECF Nos. 397, 398, Pls.' Mot. and Mem. in Supp. to Dismiss 450 Opt-Ins (Plaintiffs admitting that out of the approximately 2,800 opt-ins for which FedEx produced vehicle data, at least 450 drove light vehicles a de minimis amount of time, exempting them from overtime and requesting dismissal); *see also id.*, ECF Nos. 55, 72, 88, 89 (evidence that of the few dozen pre-notice opt-ins, a number of them did not drive light vehicles).)

But that wasn't the only problem. Over the course of the litigation, LLR dismissed another <u>three named Plaintiffs</u> because they disappeared and failed to participate in discovery. (*See id.*, ECF Nos. 293, 294 (dismissing original named Plaintiff, A. Sullivan-Blake); *id.*, ECF No. 378 (dismissing putative Hawaii class representative named Plaintiff, D. Kauhane); *id.*, ECF Nos. 464, 465 (dismissing putative New Jersey class representative named Plaintiff, D. Forrester).)

### B.    LLR Voluntarily Moves for Decertification

On April 30, 2024, after years of similar cases being denied Rule 23 and conditional or final certification, LLR voluntarily moved for decertification in *Claiborne*. (*See id.*, ECF No. 523.) LLR then asked for, and received, a 120-day tolling period to allow the dismissed opt-ins to file their claims individually. (*See id.*, ECF No. 526.) LLR purportedly spent this time "work[ing] diligently to inform the *Claiborne* opt-in plaintiffs of the decertification order and of their right to pursue individual claims." (*Id.*, ECF No. 544.) LLR further represented to this Court that it "intend[ed] to organize the complaints so that the plaintiffs in the first complaint are those who have already undergone discovery" and that "[t]he following complaints will have plaintiffs generally grouped and listed based on the state in which they worked." (*Id.*) Based on the complaints, it does not appear that this work occurred. And LLR ignored FedEx's questions about this issue since LLR filed the complaints. (Scott Decl. ¶¶ 30-31, & Ex. G.)

## II.    THE *ABNER* ACTION

On August 6, 2024, LLR filed this mass action on behalf of 11,941 plaintiffs. (ECF No. 1.)[4] Given the large number of Plaintiffs, FedEx's counsel contacted LLR after the complaints

---

[4] LLR also filed two separate suits in this Court on behalf of 385 plaintiffs and two plaintiffs, respectively, and filed two suits in the District of Massachusetts on behalf of 38 and 145 plaintiffs. *See Brannon v. Federal Express*, No. 2:24-cv-01128-RJC (W.D. Pa.); *Atwood v. Federal Express*, No. 2:24-cv-01127-RJC (W.D. Pa.); *Doyle v. Federal Express*, No. 3:24-cv-

were filed to find out how LLR organized the various groupings of Plaintiffs. (Scott Decl. ¶¶ 30-31, & Ex. G.) Specifically, FedEx asked (1) whether the complaints were intended to include only previous opt-ins or if they included new plaintiffs as well, and (2) whether the *Abner* action was intended to include only opt-ins who did not participate in any opt-in discovery in *Claiborne* (and in *Brannon* only those that had participated in discovery in some way, as LLR's previous letter to the Court in *Claiborne* had represented). (*Id.*) Despite repeated follow-up requests, LLR never responded. (*Id.*)

On August 28, 2024, without providing explanation, LLR requested that FedEx stipulate to dismissing 298 Plaintiffs from this case without prejudice. (*Id.* ¶ 29.) FedEx asked why LLR was seeking to dismiss them and informed LLR that it would not agree to stipulate to dismissal. (*Id.*) LLR did not respond. (*Id.*) On September 24, 2024, LLR filed an amended complaint, which removed these 298 Plaintiffs from the case. (*Id.* ¶ 32; First Am. Compl., ECF No. 17.)

As a result of LLR's refusal to provide FedEx this basic information, as well as the enormity of the complaint, FedEx conducted some sampling for investigation of the more than 11,000 Plaintiffs in the complaint and amended complaint. This investigation revealed that the 298 Plaintiffs dismissed between the two complaints had already been dismissed <u>with</u> prejudice from *Claiborne*. (Scott Decl. ¶ 32.)

Also, given the low participation level of *Claiborne* opt-ins chosen for discovery, FedEx conducted some social media research to attempt to find how LLR had communicated with these opt-ins about what joining as Plaintiffs, rather than opt-ins, would mean in terms of their

---

12030-KAR (D. Mass.); *Alleyne v. Federal Express*, No. 3:24-cv-12031-KAR (D. Mass.). FedEx will be filing Rule 11 motions in *Brannon*, *Alleyne*, and *Doyle* as well. Because there are only two plaintiffs in the *Atwood* case, both of whom participated in discovery, including sitting for depositions, FedEx will not be filing a Rule 11 motion there; it will be filing a partial motion to dismiss and misjoinder motion.

obligations and participation. FedEx quickly realized that LLR had not conducted any meaningful investigation into the validity of the claims asserted in this case, nor did it appear that LLR had adequately informed opt-ins that they were becoming named Plaintiffs with obligations to participate fully in discovery, to preserve documents for litigation, or the risks associated with becoming a named Plaintiff (including being responsible for costs if they lose their case).

### ARGUMENT

In filing *Abner*, LLR has not come close to meeting its Rule 11 obligations. Under Rule 11, the attorney's signature on a pleading "certifies that the signer has done three things: (1) read the pleading, motion, or paper; (2) made a reasonable inquiry into the contents of the pleading, motion, or other paper and concluded that it is well grounded in fact and warranted in law; and (3) has not acted in bad faith in signing the document." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1278 (3d Cir. 1994). As the court in *In re Engle Cases* aptly recognized, the volume of claims does not change these obligations. 283 F. Supp. 3d at 1221. Yet LLR is doing just what *In re Engle Cases* warned against: attempting to overwhelm FedEx and the Court with a "tidal wave of lawsuits, and at the same time bear diminished responsibility for filing claims that lack factual support." *Id.*

That is, instead of conducting the required, reasonable inquiry to determine which, if any, of the Plaintiffs have viable individual claims to bring before filing, LLR filed an untenable and unworkable mass action on behalf of anyone who responded to a mass email requesting permission to "refile" their claim. This failure has resulted in individuals being included as named Plaintiffs who do not have claims. LLR cannot continue to treat this case as a putative class or collective action after it voluntarily decided against class and collective treatment. That decision had consequences. It meant that LLR now had to conduct a reasonable legal and factual inquiry into each individual Plaintiff's claims <u>before</u> moving forward with a new lawsuit to

ensure that it included only valid claims brought by individuals willing and able to fully participate in the discovery process to prosecute them, and for LLR itself to ensure <u>it</u> could promptly and efficiently litigate these claims.

If FedEx is forced to respond to the amended complaint and defend this case as currently pled, the parties and this Court are headed for years of fruitless litigation and an incomprehensible waste of resources. FedEx will have to seek discovery from thousands of Plaintiffs who will not adequately respond (if at all) and winnow down countless claims that were never viable to begin with. And that's by design. Indeed, Ms. Liss-Riordan promised this when she told FedEx's counsel that if FedEx was not willing to negotiate a "global resolution," then the parties would "have fun together" litigating the cases for the "next 10 years or more." (Scott Decl. ¶¶ 23-24.) But FedEx should not be required to fulfill LLR's basic Rule 11 requirements for it. Rather, the Court should dismiss the complaint, and require LLR to conduct the reasonable investigations and communications it should have done before filing.

## I.      LLR HAS VIOLATED RULE 11(b)(1)

"By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation . . ." Fed. R. Civ. P. 11(b)(1). "In order to demonstrate that a filing was not frivolous, unsupported, or abusive, counsel must show that there was a 'reasonable investigation of the facts and a normally competent level of legal research to support the presentation' of a claim." *Soo San Choi v. D'Appolonia*, 252 F.R.D. 266, 273 (W.D. Pa. 2008) (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986)). LLR has not and cannot make such a showing, because it cannot

even demonstrate that the over 11,000 Plaintiffs are valid Plaintiffs or that LLR can ensure each Plaintiff will actively participate in this litigation.

## A.    There Is No Indication These Are Valid Plaintiffs

After voluntarily decertifying its case, LLR asked for 120 days to file individual claims on behalf of its clients. While it appears LLR sent out a mass email to the previous *Claiborne* opt-ins, it does not appear that LLR communicated to its clients the significant differences between being an opt-in versus a named Plaintiff. This matters because "the fact that an individual might have been interested in participating as a passive class member in a case that might potentially be resolved on a classwide basis did not mean that he or she was legally authorized or willing to file an individual contested lawsuit." *In re Engle Cases*, 283 F. Supp. 3d at 1222 n.41 (cleaned up).

LLR's communications to its clients, some of which its clients posted online,[5] only informed the opt-ins of their right to pursue individual claims against FedEx and misleadingly suggested that LLR already made a determination regarding the merits of their claims. LLR did not explain that pursuing these claims on an individual basis would mean these Plaintiffs would not have full discovery and other obligations they did not have previously. For example, in an email sent on or about May 7, 2024 (attached as Ex. H (*see also* Scott Decl. ¶ 34)), LLR:

- Requested that individuals submit a retainer so that LLR can "CONTINUE REPRESENTING YOU TO RECOVER OVERTIME PAY <u>WE BELIEVE YOU ARE OWED</u>" (underlined emphasis added) and that the individual initially opted

---

[5] Other than the information posted publicly online, FedEx does not have insight into other communications LLR may have had with its clients, if any, and FedEx is not asking for such communications. If LLR claims to have had additional communications with those that are Plaintiffs that proves they were properly informed of, and accepted, their duties and obligations of acting as Plaintiffs, it should present them to the Court for in camera review. However, even if LLR has such communications, this does not resolve the separate bases for this motion, which is that LLR itself did not do any investigation into the validity of any of these Plaintiffs' claims and that LLR admittedly is unable to timely or properly prosecute Plaintiffs' claims.

into the case where LLR was arguing that they "get paid overtime you <u>are</u> eligible for" (emphasis added).

- Stated that representing them on their overtime claim against FedEx and "re-fil[ing]" their individual claim "is no problem for us to do, and we expect to continue representing thousands of FedEx drivers around the country for whom we have been pursuing this claim." *Id.*

Another communication from LLR, attached as Ex. I (*see also* Scott Decl. ¶ 35), states "[w]e have been pursuing your claim for several years but, under a recent court ruling, we need your permission to refile your claim." That communication then linked to LLR's website, where it requested information from the individual "[t]o see if you qualify." (Ex. J (*see also* Scott Decl. ¶ 36).) Other than contact information, the questions simply asked for "FedEx Terminal City" and "FedEx Terminal State"—nothing about qualification to participate as a Service Provider driver that drove light vehicles and were not paid overtime. (*See* Ex. J.) And, most notably, despite the entire basis for pursuing FedEx instead of Plaintiffs' employing Service Providers on the theory that FedEx employed them, for individuals to submit the form, they had to check the following:

Request for Legal Advice/Privilege and Confidentiality Agreement *

☐ I want legal advice about my potential claims against FEDEX. I am not an employee or agent of FEDEX. I will keep what I learn inside this site confidential.

(*Id.* (highlighting added).)

These communications show that once a person simply signed up with nothing more than this basic information, and confirmation they are <u>not</u> an employee of FedEx, LLR would automatically "refile" their claim, regardless of its merit and regardless of them having any actual understanding of what they were signing on to do.[6] This was likely strategic. Ms. Liss-

---

[6] LLR itself has put all Plaintiffs' claims in a worse position. If a person does <u>not</u> believe FedEx was their employer, that is relevant to several joint employment factors, including who actually

Riordan's prior statements to this Court show that she was aware that most opt-ins did not want to actively participate in a lawsuit. By conveniently leaving out any information about future discovery and other obligations, and suggesting merits determinations had already been made, LLR increased the number of respondents, which, helpfully for LLR, increases the costs of litigation for FedEx in an attempt to harass FedEx into settlement.[7]

LLR has failed to properly vet the validity of their claims or to ensure they will fully participate before filing entire putative state class actions on their behalf (*see* Section I above (discussing Plaintiffs Burton, Russell, Deppiesse, Kauhane, Sullivan-Blake, and Forrester)). That is sanctionable conduct. *See, e.g.*, *In re Engle Cases*, 767 F.3d 1082, 1088 n.4 (11th Cir. 2014) ("[T]he lawyers in these cases have established a pattern of acting on behalf of 'clients' they have dubious authority to represent. As will become evident from the history of this mass action, plaintiffs' counsel have mostly managed their inventory of cases as they see fit, with scant contact with or input from the individuals they purport to represent.").

---

controlled their day-to-day work, discipline, who they reported to, and related information. At a minimum, it is impeachment material for every Plaintiff that checked that box.

[7] Specifically, before filing this suit, Ms. Liss-Riordan told FedEx's counsel, Ms. Scott, that LLR was planning to file "many thousands" of claims and that now would be a good time to discuss a "global resolution." (Scott Decl. ¶¶ 23-24.) Ms. Liss-Riordan stated that the parties could mediate based on "data" regarding these individuals, and when Ms. Scott asked if that included Plaintiffs obtaining and providing actual pay information for these individuals, Ms. Liss-Riordan did not answer the question. (*Id.* ¶ 26.) Ms. Liss-Riordan touted that if FedEx was not interested in a global resolution for these thousands of claims, the parties would "have fun together" litigating these cases "for the next 10 years or more." (*See id.* ¶¶ 24, 27.) This, despite the Court's previous statement in *Claiborne* regarding attempting to obtain the limited opt-in discovery ordered there: "I assume neither of you want to spend the next ten years doing it. And I'm assuming – I can assure you that's not going to happen." (Ex. D, Hr'g Tr. 27:24-28:1.)

**B.    LLR Knows It Cannot Get Each Plaintiff to Participate in this Case as Plaintiffs Are Required to Do**

It's beyond belief that over 11,000 Plaintiffs will each fully participate in discovery (as they must because LLR has included them as named Plaintiffs), including responding to written discovery and sitting for depositions. In *Claiborne*, LLR could marshal only partial participation from much less than 2,000 opt-ins that were selected for limited discovery, over a <u>four-year</u> period.

The Court has previously recognized that based on the way things were going in early 2022, it was "obvious" that LLR would not even get half of the requisite responses to the discovery. (*See e.g.*, Ex. D, Hr'g Tr. 39:2-4; *see also id.* 28:15-19 ("And Ms. Liss-Riordan, if, at the end of this first round, we have a 50 percent return rate and, of those, a third of those are only partial returns, I can – I'll entertain your argument, but I'm pretty sure we're going to have another round of discovery.").) The results were even worse in *Roy*, where LLR took an exorbitant amount of time to get just 50 opt-ins to participate in discovery. And those struggles occurred despite LLR's self-proclaimed diligence. But that didn't stop LLR from assuring the former opt-ins that refiling their claims here and litigating thousands of individual driver claims was "no problem for [it] to do." (*See* Ex. H.)

If past is prologue, and there is no reason to believe that it isn't, LLR's ability to handle the monumental discovery obligations presented here is in serious doubt, especially because the number of lawyers for Plaintiffs is less than in *Claiborne*, with only LLR (a law firm of 13 attorneys) listed as Plaintiffs' counsel.[8] LLR's admitted inability, even with co-counsel involved,

---

[8] Albeit all relatively small firms, *Claiborne* has three firms involved: LLR; Winebrake & Santillo, LLC; and The Law Offices of Brian D. Gonzales, PLLC. (*See, e.g.*, *Claiborne*, ECF No. 297 at 19-20.)

to fully litigate on behalf of hundreds of individuals in *Claiborne* and *Roy* in a timely or efficient manner means that LLR filed its new cases against FedEx, including this one, only to "harass, cause unnecessary delay, [and] needlessly increase the cost of litigation" (*see* Fed. R. Civ. P. 11(b)(1)), as Ms. Liss-Riordan stated, in an attempt to reach some sort of "global resolution." FedEx and the Court should not be the ones burdened with going through the discovery process with each of these individuals to try to figure out which ones legitimately can and will participate as Plaintiffs.

Even as recently as October 25, 2024, when dealing with just the remaining 12 plaintiffs in *Claiborne*, Ms. Liss-Riordan attempted to blame LLR's grossly erroneous damages calculations it provided to FedEx for them on having to go through "a ridiculous amount of data" and that somehow this was FedEx's fault. (Scott Decl. ¶¶ 37-38, & Ex. M.) But this "ridiculous amount of data" LLR used was simply paystubs the plaintiffs produced (none of whom produced complete sets), the plaintiffs' depositions, and the summary scanner and vehicle data LLR had requested from FedEx <u>for just 12 plaintiffs</u>. (Scott Decl. ¶¶ 38-39, & Ex. M.) When LLR is unable to put together basic damages disclosures and calculations for just 12 plaintiffs, it is implausible that LLR will be able to adequately litigate on behalf of thousands of Plaintiffs here.

The *In re Engle Cases*, 283 F. Supp. 3d at 1221, is instructive. There, following the decertification of a class action, a law firm was given one year to file claims on behalf of individual plaintiffs. *Id.* at 1185-87. The law firm filed 3,700 complaints in state and federal courts, despite the fact that it did not have the capacity to litigate on behalf of 3,700 people and was not able to contact all of its "clients" before the filing deadline. *Id.* When it couldn't get in touch with the potential plaintiffs, it relied on previous opt-in forms from the collective as the basis for filing the complaints. *Id.* at 1187.

Over the next several years, the majority of the claims were "resolved through a painstakingly piecemeal culling process," involving court-ordered questionnaires, which yielded only an approximately 65% response rate, and numerous plaintiffs dismissed for frivolity. *Id.* at 1182-84, 1188, 1190, 1194 (noting that 118 cases were dismissed because they were filed in "clerical error," the law firm had filed over 500 cases on behalf of dead plaintiffs, 30 cases were dismissed because they were previously adjudicated, and 25 cases were dismissed because plaintiffs had opted-out of the previous class action). In the end, the court found that the law firm had filed and maintained at least 1,250 suits that were "frivolous from their inception." *Id.* at 1254. The court sanctioned the law firm over nine million dollars to recoup judicial and public resources. *Id.* at 1255.

FedEx is not asking the Court to sanction LLR in this way. But the "root of the problem" is the same here as it was in *Engle*. That is, when this case was filed, "the law firm that brought [it] didn't have the time or resources required to fully investigate all the complaints." *See In re Engle Cases*, 767 F.3d at 1087. Because of this, "problem after problem cropped up" and "[o]ver and over, plaintiffs' counsel explained that these problems were the result of the unique logistical difficulties involved in managing so many individual lawsuits." *Id*. But that cannot change the irrefutable fact that "a lawyer's responsibilities to the court are not diluted even by an ocean of claims." *Id.* In other words, the same rules apply whether there is one plaintiff or 11,000.

## II.    LLR HAS VIOLATED RULE 11(b)(2)-(3)

Rule 11 sanctions are appropriate where the claims presented are legally baseless and not based on a reasonable inquiry. *See e.g.*, *Clemmons v. Wells Fargo Bank, N.A.*, No. 14–4020–JTM, 2015 WL 1242651, at *4 (D. Kan. Mar. 18, 2015) ("A plaintiff may be sanctioned under Rule 11 for filing claims barred by res judicata."); *Joseph v. Linehaul Logistics, Inc.*, 291 F.R.D. 511, 514-16 (D. Mont. 2013) (sanctioning attorney under Rule 11 for bringing FLSA claim that

was barred by issue preclusion based on previous lawsuit brought under state law); *Ruffin v. ITT Cont'l Baking Co.*, 636 F. Supp. 857, 859-60 (N.D. Miss. 1986) (imposing Rule 11 sanctions where a reasonable inquiry would have revealed futility of filing claims that were previously dismissed with prejudice); *In re Engle Cases,* 283 F. Supp. 3d at 1221 (rejecting counsel's argument that factual errors were inevitable given that he had only one year to file complaints on behalf of over 3,700 individuals). FedEx's investigation into these claims is far from complete, but it has already uncovered myriad problems with a significant number of Plaintiffs' claims. Those problems include naming Plaintiffs who are still Plaintiffs in *Claiborne*, including those whose claims were previously dismissed with prejudice, naming Plaintiffs who previously unsuccessfully pursued claims against FedEx in other forums, and naming Plaintiffs whose claims are clearly time barred. Beyond that, the amended complaint lacks even the most basic facts to support the claims alleged.

All of these problems could have been avoided if LLR had just conducted the requisite inquiry or analysis of its clients' claims. Because LLR failed to do so, dismissing this case without prejudice is the appropriate sanction.

### A.    LLR Has Included Two of the 12 Named Plaintiffs in *Claiborne*

The fact that LLR has done <u>no</u> reasonable inquiry into the Plaintiffs it included in the amended complaint is perhaps most notably demonstrated by the fact that LLR included in this case two <u>current named Plaintiffs</u> in the *Claiborne* action, Ernesto Diaz and Arthur Foster, in the amended complaint. (*See* First Am. Compl. ¶¶ 6539, 8582.) Clearly, Diaz and Foster cannot maintain actions against FedEx for the same claims they are already pursuing as named Plaintiffs in *Claiborne*, and thus their claims are legally baseless here.

**B.    LLR Has Included Plaintiffs Whose Claims Were Previously Dismissed With Prejudice**

In the original *Abner* complaint, LLR brought claims on behalf of approximately 378 Plaintiffs whose claims were dismissed <u>with prejudice</u> as opt-ins in *Claiborne*. (*Compare* Compl., ECF No. 1, *with Claiborne*, ECF Nos. 59, 67, 69, 74, 92, 98, 204, 207, 219, 241, 251, 278, 294, 298, 312, 358, 363, 373, 378, 428, 430, 432, 461, 466, 481, 502, 507.) These Plaintiffs include individuals LLR sought to have dismissed in *Claiborne* (that the Court ordered be with prejudice) because they drove only heavy vehicles (*see Claiborne*, ECF Nos. 397, 432), individuals who were dismissed with prejudice for failure to complete opt-in discovery (*see e.g.*, *Claiborne*, ECF Nos. 358, 502), and individuals who voluntarily opted out of the case, with prejudice (*see e.g.*, *Claiborne*, ECF Nos. 378, 461). Such claims are legally baseless and barred by res judicata. LLR has no excuse for filing a complaint on behalf of these individuals—LLR itself represented them during the entirety of the *Claiborne* action.

Before service on FedEx, LLR filed an amended complaint that removed only 298 of these Plaintiffs. (First Am. Compl., ECF No. 17.) But before filing the amended complaint, LLR requested that FedEx agree to stipulate to the dismissal of these Plaintiffs here, <u>without</u> prejudice, even though LLR should have known that these same Plaintiffs had previously been dismissed <u>with</u> prejudice in *Claiborne*. (*See* Scott Decl. ¶ 29.) FedEx's counsel asked why LLR was dismissing so many Plaintiffs after just filing the complaint. LLR never answered and, instead, simply filed the amended complaint. (*Id.* ¶¶ 29, 32.) Presumably, LLR did not want to admit it had not done even a basic search of *Claiborne* dismissals before filing *Abner*.

Moreover, even though LLR apparently caught part of this problem and was on notice of its mistake, it still did not conduct a fulsome investigation before filing the amended complaint. There are still approximately 90 Plaintiffs named in the *Abner* amended complaint whose claims

were previously dismissed with prejudice. As noted above, these Plaintiffs include (a) opt-ins who previously opted out of *Claiborne* with prejudice as well as (b) opt-ins who were dismissed for failure to complete discovery and (c) opt-ins who were dismissed as not having valid claims (as admitted in LLR's vehicle-weight motion). (*Compare Claiborne*, ECF No. 373 (dismissing Christopher Cameron McIndoe with prejudice) *with Abner*, ECF No. 17, ¶ 10673; *Claiborne*, ECF No. 492 (dismissing Jose Tapia Piseno with prejudice) *with Abner*, ECF No. 17, ¶ 1550. *Compare Claiborne* ECF Nos. 358, 501, 502 (dismissing Mark Palmer, Michael Carter, and Jared Clements with prejudice for not responding to FedEx's discovery questionnaire), *with Abner*, ECF No. 17, ¶¶ 4256, 4577, 3106. *Compare Claiborne* ECF Nos. 397, 432 (dismissing Ed Grim and Jesus Morales for not having driven light vehicles), *with Abner*, ECF No. 17, ¶¶ 2726, 8763.)

## C. LLR Has Included a Plaintiff Who Admittedly Never Drove Light Vehicles and Who Previously Litigated, and Lost, His Claims Against FedEx in Federal Court in Colorado

Plaintiff Andrew Bachanov alleges he drove in Colorado from 2016 to 2018 and drove a vehicle weighing less than 10,001 pounds but was not paid overtime for hours worked over 40. (*Abner*, ECF No. 17, ¶ 1950.) But, FedEx obtained summary judgment against Bachanov for his state law overtime claims in federal court in Colorado in 2020, when he was represented by LLR's co-counsel in *Claiborne*, Brian Gonzales. (Scott Decl. ¶¶ 15, 21-22, & Ex. K.) In that earlier action, Bachanov had filed a putative class action for overtime, purportedly representing heavy vehicle drivers (i.e., drivers of vehicles with a GVWR of 10,001 pounds or more). (Scott Decl. ¶ 17, & Ex. L ¶ 18.) Indeed, the evidence in that case showed that Bachanov had driven only heavy vehicles. (Scott Decl. ¶ 18.)

Despite this, and his counsel's knowledge of the same, Bachanov signed an opt-in form in *Claiborne* stating he had driven light vehicles, and now LLR has included him in the *Abner*

complaint alleging the same. Not only is this allegation baseless and directly contrary to the facts that LLR's co-counsel in *Claiborne* knew, but all of his overtime claims against FedEx are barred by res judicata: Bachanov sued and lost on his state overtime claims against FedEx and could have and should have brought his FLSA claim in the same case.[9] *See, e.g.*, *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173-74 (3d Cir. 2009) (applying res judicata bar to state law claim, here prior federal claim based on same set of facts against same defendant was previously dismissed with prejudice).

**D.    LLR Has Included 228 New Plaintiffs in the Case, Many of Whose Claims Are Time Barred on the Face of the Complaint**

Despite its representations to the Court that this lawsuit would be comprised only of previous opt-in plaintiffs (*see Claiborne*, ECF No. 544), LLR has included approximately 228 Plaintiffs in the case who were not previously opt-ins in *Claiborne* or *Roy*. When FedEx's counsel asked if LLR intended any of its new complaints to include new Plaintiffs that had not before been opt-ins, LLR refused to answer. (Scott Decl. ¶ 31, & Ex. G.)

The inclusion of these new individuals is problematic because they did not benefit from the many years of tolling in *Claiborne* or *Roy*. And, as a result, from the face of the amended complaint, many of these new Plaintiffs' claims are time barred.[10] As just a few examples, LLR alleges that Daniel Duffy drove from 2015 to 2018, Eddie Larry drove from 2016 to 2018, and Roy Graves drove from 2017 to 2019. (*See* First Am. Compl. ¶¶ 2189, 3841, 10845.) These Plaintiffs' claims therefore expired in 2021 or 2022, more than two years before LLR filed the

---

[9] Of course, the likely reason Bachanov did not bring an FLSA claim in that case is because his counsel, Mr. Gonzales, knew Bachanov did not drive light vehicles and therefore was exempt from overtime under the FLSA. (Scott Decl. ¶¶ 19-20.)

[10] Under the FLSA, even assuming these Plaintiffs could prove willful violations, the limitations period would, at most, be three years. *See* 29 U.S.C. § 255(a).

original complaint here. Again, a reasonable inquiry would have revealed that these Plaintiffs (and others like them) have no claims, yet LLR did not perform one. *See e.g.*, *McCabe v. Lifetime Ent. Servs., LLC*, No. 17-CV-908-ERK-SJB, 2018 WL 1521860, at *17 (E.D.N.Y. Jan. 4, 2018) (finding Rule 11 sanctions appropriate where complaint alleged previously litigated class action claims through a named plaintiff whose claims were "plainly time-barred").

### E.    LLR Has Not Alleged Even Basic Facts for Many of the Plaintiffs' Claims

Knowing full well that many drivers do not qualify for overtime (or were paid overtime if they did qualify) for significant periods of time that they drove,[11] LLR proceeded with blanket allegations claiming damages for all years driven. (*See generally* First Am. Compl., ECF No. 17.) Even worse, for over 2,000 Plaintiffs, the amended complaint doesn't provide any time period for when they drove. (*See generally id.*)

This is true even for Plaintiffs who previously participated in some way as discovery opt-ins in *Claiborne*, where some of this basic information was identified in opt-in questionnaires, or in data produced to LLR.[12] Thus, even where the information was readily available to them, LLR did not take the time to inquire into the most basic facts and then convey those facts in its

---

[11] While this applies to a number of the 12 remaining plaintiffs in *Claiborne*, two clear examples are Horace Claiborne (*see Claiborne*, ECF No. 206 (LLR arguing that any discovery from Claiborne past 2017 from when he was driving heavy vehicles is irrelevant)) and Thomas Deppiesse (*Claiborne*, ECF No. 385 at 3-4 (LLR requesting that Deppiesse be dismissed without prejudice from the case due to vehicle information showing he never drove a light vehicle, but Deppiesse testifying that he thinks he drove a light rental vehicle for a "short period of time")).

[12] It appears that almost 700 *Abner* Plaintiffs were selected for some sort of discovery in *Claiborne*, more than half of which were included as part of LLR's request for scanner data with vehicle information but where the opt-ins did not also have to reciprocally participate. (Scott Decl. ¶ 33.) Not only does this show that LLR had information available to it to review, but it also shows that LLR, despite how it described to this Court and FedEx it was filing a complaint with people that had never participated in discovery, confusingly didn't do so; again, likely because it did no reasonable inquiry before filing. When FedEx asked about this, LLR never responded. (*Id.* ¶ 31, & Ex. G.)

pleading.[13] Such cavalier conduct is sanctionable. *See, e.g.*, *In re Engle Cases*, 283 F. Supp. 3d at 1218 (awarding Rule 11 sanctions where the plaintiffs' counsel's "approach to filing the complaints was to file-first-and-ask-questions-later by stating that his firm lacked 'the ability to contact 7,000 people in a year,' so instead they opted to file the complaints and then determine whether the cases were viable"); *Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, 338-341 (W.D. Pa. 2012) (issuing sanctions where "[c]ounsel failed to independently investigate his client's claims despite the fact that he was the one who was in the position to obtain such information").[14]

**F.    LLR Has Not Requested Pay Documents from Plaintiffs' Employers**

Some courts have held that in FLSA cases, a reasonable pre-suit factual inquiry includes requesting the plaintiff's pay documents from their employer and reviewing those documents to ensure the factual viability of their overtime claim. *See e.g.*, *Brown v. M/I Homes of Orlando, LLC*, No. 608-CV-528-ORL-28KRS, 2008 WL 5099695, at *2 (M.D. Fla. Nov. 26, 2008) ("In any case brought under the FLSA, a reasonable pre-filing inquiry necessarily would include a substantive inquiry with Plaintiff regarding her attendance at work, including absences for vacations, medical leave, etc., and a request to Plaintiff's employer to inspect or copy Plaintiff's time sheets, payroll records, and other relevant records that an employer is required to maintain."); *Estrada v. FTS USA, LLC*, No. 14-23388-CIV, 2018 WL 1836007, at *4-5

---

[13] (*Compare, e.g.*, *Abner* Am. Compl. ¶ 3612 (alleging that S. Ahmed drove from 2016 to 2019) *with Claiborne*, ECF No. 547-67 at 3-4 (showing that Ahmed, a *Claiborne* opt-in that was actually deposed (a deposition LLR defended), drove only in 2019).)

[14] LLR will attempt to distinguish *In re Engle Cases* because LLR sent out a mass email communication this year asking for permission to "refile" *Claiborne* opt-ins' claims and, presumably, obtained such permission in response to that communication before filing. However, as discussed at length throughout this brief, LLR did not explain to the previous opt-ins how their status was changing and what that meant for them and, even if it had, LLR was still under an obligation to conduct a reasonable inquiry into their claims and never did so.

(S.D. Fla. Jan. 23, 2018), *r. & r. adopted*, No. 14-CV-23388, 2018 WL 1811907 (S.D. Fla. Mar. 16, 2018), *aff'd*, 810 F. App'x 743 (11th Cir. 2020), ("In this case, had Plaintiff's counsel looked at the Plaintiff's Earnings Statements, they would have seen that Defendant paid Plaintiff overtime wages."). But, for years, LLR has not sought this information.

During the entirety of discovery during *Claiborne*, LLR did not request pay documents from the opt-in plaintiffs' Service Providers, though it knows full well that is where opt-ins' pay documents reside. (Scott Decl. ¶ 13.) Indeed, still to this day LLR has not issued subpoenas to the 12 *Claiborne* Plaintiffs' employing Service Providers for these documents, despite representing to FedEx that Plaintiffs' incomplete productions will remain incomplete because Plaintiffs themselves have no other documents in their possession. (*Id.*) LLR clearly has not done so here either with respect to the over 11,000 Plaintiffs, and thus has not conducted any factual inquiry into these Plaintiffs' claims apart from the online form Plaintiffs filled out with basic information that requested nothing about pay or vehicles driven. (*See* Ex. J.)

III.    **PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED AND LLR SHOULD BE REQUIRED TO CONDUCT A REASONABLE INQUIRY INTO EACH PLAINTIFF'S CLAIMS BEFORE REFILING**

FedEx anticipates LLR's response to this motion will be to offer to dismiss those individuals discussed herein. However, this does not resolve the overarching problems with the amended complaint itself and as applied to <u>all</u> Plaintiffs:

- (1) the complaint was filed to harass, cause unnecessary delay, and to needlessly increase the cost of litigation because

    - (a) LLR did nothing to ensure that <u>any</u> of these Plaintiffs are <u>legitimate</u> Plaintiffs with an understanding of their obligations to actively participate in the case (which we know from LLR's own communications with its clients); and

    - (b) LLR knows full well based on past experience in *Claiborne* and *Roy* that it cannot possibly properly litigate this case on behalf of almost

12,000 individuals (which we know from LLR's admissions to this Court); and

- (2) LLR conducted no reasonable inquiry as to each Plaintiff to ensure their claims had legal and factual merit (which we know from the many examples above of the baseless claims they have filed in this case).

As a result, the <u>only</u> solution here to rectify these Rule 11 violations is to dismiss the amended complaint without prejudice to refile once, and if, LLR does what it has failed to do.

Rule 11 sanctions are applied in cases where the filing "is patently unmeritorious or frivolous." *Garr*, 22 F.3d at 1281; *Soo San Choi*, 252 F.R.D. at 274 ("The purpose of Rule 11 is to 'target abuse, making sanctions appropriate only if the filing of the complaint or other paper constitutes abusive litigation or misuse of the court's process.'"). Rule 11 sanctions can be monetary, non-monetary, or both. *See e.g.*, *Est. of Hennis v. Balicki*, No. CV 16-4216 (JBS-AMD), 2018 WL 2230543, at *2 (D.N.J. May 16, 2018). "Dismissal is a legitimate sanction under Rule 11, for serious misconduct when lesser sanctions would be ineffective or are unavailable." *Marina Mgmt. Servs., Inc. v. Vessel My Girls*, 202 F.3d 315, 325-26 (D.C. Cir. 2000) (citations omitted) (affirming dismissal of five counterclaims under Rule 11); *Del Giudice v. S.A.C. Cap. Mgmt., LLC*, No. CIV. A. 06-1413 SRC, 2009 WL 424368, at *11-12 (D.N.J. Feb. 19, 2009) (dismissing amended complaint without prejudice where lawsuit "was filed without even the pretense of a factual investigation by the filer"); *Miller v. Bridgeport Bd. of Educ.*, No. 3:12-CV-01287 JAM, 2014 WL 3738057, at *10 (D. Conn. July 30, 2014) (dismissing lawsuit with prejudice where lawyer fabricated allegations in complaint); *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (affirming dismissal as Rule 11 sanction where plaintiff used fabricated documents to support false allegations in complaint).

Here, any sanction other than dismissal would be ineffective. The Court granted LLR 120 days following its voluntary decertification of *Claiborne* to file claims on behalf of individual

plaintiffs. LLR was supposed to use that time to adequately discuss the validity of opt-ins' claims and their desire to continue to pursue them as Plaintiffs rather than part of a collective. LLR did not do so. LLR's Rule 11 obligations are not diminished because it decided to bring suit on behalf of 11,643 Plaintiffs, nor should LLR's burden be shifted to FedEx. *See In re Engle Cases*, 283 F. Supp. 3d at 1221.

Requiring FedEx to bear that burden for LLR by filing countless motions to dismiss and seeking discovery from thousands of Plaintiffs who will not respond would be prejudicial and a waste of the parties' and this Court's time and resources. According to Ms. Liss-Riordan, that process will take "the next 10 years." But even that estimate may be too conservative, given the history of lack of participation in *Claiborne* over the course of a four-year period for a smaller discovery group and for more limited discovery requests and comparably few depositions.

Just as in the *In re Engle Cases*, LLR has brought an "ocean of claims" against FedEx, many of which are frivolous and all of which, at the very least, have not been reasonably investigated by LLR. *See* 767 F.3d at 1087. FedEx and this Court should not be required to conduct the same painstaking winnowing process conducted there, which, from what FedEx discussed above, is certain to uncover the same result: LLR brought claims that were frivolous from the start and brought claims on behalf of Plaintiffs it knew would ultimately not actually participate. "It's not the Court's responsibility to engage in this winnowing process. The Court's responsibility is to take counsel to task when complaints are filed that are not authorized, for which there has been no affirmative act by the client to engage the lawyer to request that those services be expended on his or her behalf." *See In re Engle Cases*, 283 F. Supp. 3d at 1199.

## CONCLUSION

FedEx respectfully requests that its motion be granted in full.

Dated: December 2, 2024                            Respectfully submitted,


                                                   *s/ Jessica G. Scott*
                                                   Jessica G. Scott (CO 37287) (*pro hac vice*)
                                                   Wheeler Trigg O'Donnell LLP
                                                   370 Seventeenth Street, Suite 4500
                                                   Denver, CO  80202-5647
                                                   Telephone:     303.244.1800
                                                   Facsimile:     303.244.1879
                                                   scott@wtotrial.com

                                                   Joseph P. McHugh (PA 77489)
                                                   Shanicka L. Kennedy (PA 88306)
                                                   Federal Express Corporation
                                                   1000 FedEx Drive
                                                   Moon Township, PA  15108
                                                   Telephone:   412.859.5917
                                                   Telephone:   412.859.5792
                                                   Facsimile:     412.859.5413
                                                   joseph.mchugh@fedex.com
                                                   shanicka.kennedy@fedex.com

                                                   Attorneys for Federal Express Corporation,
                                                   successor by merger to FedEx Ground Package
                                                   System, Inc.

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on December 2, 2024, I electronically filed the foregoing **FEDERAL EXPRESS CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION FOR RULE 11 SANCTIONS** with the Clerk of Court using the CM/ECF system, which will send notification of such to the following email addresses:

- **Sara R. Schalman-Bergen**
  ssb@llrlaw.com, courtssb@llrlaw.com

- **Shannon Liss-Riordan**
  sliss@llrlaw.com

- **Matthew Carrieri**
  mcarrieri@llrlaw.com

- **Jeremy Edward Abay**
  jabay@llrlaw.com

- **Harold Lichten**
  hlichten@llrlaw.com

*s/ Jessica G. Scott*