# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL ABNER et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>FEDERAL EXPRESS CORPORATION, successor by merger to FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>        Defendant. | CIVIL ACTION<br><br>No. 2:24-cv-01129-RJC |

**DECLARATION OF JESSICA G. SCOTT IN SUPPORT OF FEDERAL EXPRESS CORPORATION'S MOTION FOR RULE 11 SANCTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

I, Jessica G. Scott, declare and state as follows:

1.     I am a partner at the law firm of Wheeler Trigg O'Donnell LLP. I am over 21 years of age, and I have personal knowledge of the matters stated in this declaration. If asked to testify, I would be competent to testify to these matters.

**Pertinent Background in the *Claiborne* Case**

2.     I have been counsel of record for Federal Express Corporation, successor by merger to FedEx Ground Package System, Inc., ("FedEx") in the above captioned case as well as in the *Claiborne v. FedEx Ground Package System, Inc.*, No. 2:18-cv-01698-RJC (W.D. Pa.) ("*Claiborne*"), since their inceptions. I was also counsel of record in *Roy v. FedEx Ground Package System, Inc.*, No. 3:17-cv-30116-KAR (D. Mass.) ("*Roy*"), since 2019, until its resolution in 2024.

3.     In the *Claiborne* case, FedEx was entitled to seek limited discovery, in the form of questionnaires to which the Parties agreed, from a total of 1,748 opt ins.

4.     On March 29, 2021, FedEx sent out an initial tranche of questionnaires to 500 opt-ins. Of those initial 500, ultimately 203 either did not respond at all and were dismissed from the case with prejudice, or dropped their opt-out forms with prejudice. The Parties had agreed that FedEx would make a rolling production of the questionnaires (which included Department of Transportation Hours of Service Information and any vehicle information in FedEx's possession for each discovery opt-in).

5.     On October 14, 2021, FedEx sent out the next tranche of questionnaires to 305 opt-ins. Of those 305, ultimately 100 either did not respond at all and were dismissed from the case with prejudice, or dropped their opt-out forms with prejudice.

6. On November 5, 2021, FedEx sent out additional questionnaires to 601 opt ins. Of those 601, ultimately 218 either did not respond at all and were dismissed from the case with prejudice, or dropped their opt-out forms with prejudice.

7. On December 17, 2021, FedEx sent out additional questionnaires to 244 opt-ins. Of those 244, ultimately 87 either did not respond at all and were dismissed from the case with prejudice, or dropped their opt-out forms with prejudice.

8. On February 8, 2022, FedEx sent out additional questionnaires to 98 opt-ins. Of those 98, ultimately 44 either did not respond at all and were dismissed from the case with prejudice, or dropped their opt-out forms with prejudice.

9. Over the course of the next two years, LLR continued to assure FedEx's counsel and the Court, that it was working diligently to get full responses and documents to the questionnaires already issued. Meanwhile, I continued to engage with LLR on obtaining complete discovery and depositions for the named Plaintiffs and the 50+ pre-notice opt-ins (discovery that had been issued in 2020), leading to additional dismissals with prejudice, either voluntarily or by the Court.

10. On February 7, 2024, after obtaining dismissal of non-responders and partial responders from the initial batches of discovery opt-ins, FedEx issued questionnaires to 758 alternate opt-ins. Before the case was voluntarily decertified, FedEx was preparing another several hundred additional questionnaires to serve to fill the discovery gaps left by non-participants and partial participants that were, or were going to be, dismissed.

11. By decertification in early 2024, FedEx had received only 1,044 "complete" questionnaire responses from the total 2,567 discovery questionnaires it had issued. The use of the word "complete" for these purposes simply means the person filled out the questionnaire and

produced documents they said they had, if any; however, most said they didn't have any documents anymore, that they were no longer driving, and, therefore, produced little to nothing.

12. Where FedEx did receive responses to the questionnaires, even partial ones, those responses took many months, and many times years, to receive. Approximately 1,343 opt-ins took more than six months to respond, many of which were incomplete despite the delay. As just one example, two opt-ins, Calvin Banks and Roosevelt Gulley Jr., took over two-and-a-half years to respond to their questionnaires. Banks and Gulley are now named Plaintiffs in this case.

13. During the entirety of *Claiborne*, LLR did not request pay or hours-worked documents from any Service Providers, including those Service Providers that employed the remaining 12 Plaintiffs. LLR has informed my firm that the 12 Plaintiffs' productions will remain incomplete because Plaintiffs themselves have no other documents in their possession.

**Pertinent Background in the *Bachanov* Case**

14. I was lead counsel in the United States District Court of Colorado case *Andrew Bachanov v. FedEx Ground Package System, Inc.*, No. 20-cv-0601-WJM-SKC, where Bachanov asserted state law overtime claims against FedEx.

15. Brian Gonzales from the Law Offices of Brian D. Gonzales, PLLC represented Bachanov. Mr. Gonzales was then and continues to be co-counsel with LLR in *Claiborne*.

16. A true and correct copy of Bachanov's complaint is attached to FedEx's Memorandum in Support of Motion for Rule 11 Sanctions to Dismiss Plaintiffs' First Amended Complaint ("FedEx's Rule 11 Memorandum") as Exhibit L.

17. Bachanov filed a putative class action for overtime pay, and purported to represent heavy vehicles drivers; that is, drivers who drove vehicles with a GVWR of 10,001 pounds or more.

18. When the case was filed, I requested from FedEx information from its Vehicle Maintenance System on the vehicles Bachanov had driven for his Service Provider and all showed they were over 10,000 pounds GVWR. Bachanov's argument was that because he did not cross state lines, he was not an "interstate" driver for purposes of being exempt from overtime under Colorado state law.

19. Before he filed *Bachanov*, Mr. Gonzales had lost against FedEx, where I was also FedEx's counsel, a case called *Nelson v. FedEx Ground Package System, Inc.*, No. 1:18-cv-01378-RM-NYW (D. Colo.) on summary judgment. In that case, Nelson had asserted both FLSA and state law overtime claims. FedEx won summary judgment against Nelson on all claims because he had not driven vehicles weighing 10,000 pounds or less ("light" vehicles).

20. We assumed that Mr. Gonzales did not file an FLSA claim on behalf of Bachanov because he knew that the light-vehicle exception to the Motor Carrier Act exemption from overtime under the FLSA would have barred that claim, as had been the case in *Nelson*.

21. Based on the "interstate" driver issue raised by Mr. Gonzales in *Bachanov*, FedEx filed a motion for summary judgment on all of Bachanov's claims on March 31, 2020.

22. On December 3, 2020, the Court granted FedEx's motion for summary judgment in full, dismissing all of Mr. Bachanov's claims in their entirety with prejudice. That order is attached to FedEx's Rule 11 Memorandum as Exhibit K.

**Communications with LLR Regarding This Case (and the Other New Cases)**

23. On July 10, 2024, a few weeks before filing this case and the other new cases, Ms. Liss-Riordan called me to discuss whether FedEx was interested in mediating towards a "global resolution" because LLR was getting ready to file claims on behalf of "many thousands" of individual plaintiffs.

4

24. Ms. Liss-Riordan further stated that maybe my client wants to consider sitting down and having a discussion about a global resolution "or we can have fun together for the next 10 years or more."

25. I informed Ms. Liss-Riordan that I would speak with my client, but that what she was proposing was essentially a class settlement and that my client had never been willing to consider that before. I said we have no clue how these "many thousands" were paid by their Service Providers.

26. Ms. Liss-Riordan stated that the parties could mediate based on "data" regarding these individuals. I asked whether that included pay information. I said, you're filing these claims on behalf of these people that have to prove their claims, so I assume you will be collecting their pay information. Ms. Liss-Riordan dodged the question about obtaining and providing pay information.

27. Before concluding the call, Ms. Liss-Riordan again referenced "having fun" litigating against each other for the next 10 years if there was to be no global resolution.

28. After LLR filed five complaints on August 6, 2024, against "FedEx Ground Package System, Inc. and FedEx Corporation" on behalf of individual plaintiffs, I reached out to Ms. Liss-Riordan to let her know that LLR had sued the wrong entity, that is, that Federal Express Corporation, successor by merger to FedEx Ground Package System, Inc., should be the defendant named in each case, not FedEx Corp. (which is a different entity). FedEx had been filing numerous pleadings in both *Claiborne* and *Roy* in this fashion before LLR filed the new complaints and thus should have known how to properly name the defendants, or to at least inquire with FedEx's counsel. FedEx agreed to stipulate to changing the complaints to list the

5

correct defendants, rather than requiring Plaintiffs to use their amendment as a matter of course under Federal Rule of Procedure 15(a)(1) to do so.

29. On August 28, 2024, without explanation, Jeremy Abay, from LLR, sent me draft stipulations for three of the five complaints. The drafts changed the name of the defendants but also sought to dismiss Plaintiffs from each suit without prejudice. With respect to *Abner*, the proposed stipulation sought to dismiss 298 Plaintiffs. In response, I asked Mr. Abay why LLR was seeking to dismiss these Plaintiffs and informed Mr. Abay that FedEx would not agree to stipulate to their dismissal. LLR did not respond.

30. On September 3, 2024, I emailed Ms. Liss-Riordan and Mr. Abay to find out how LLR organized the various groupings of plaintiffs, based on previous statements Ms. Liss-Riordan had made to the Court in *Claiborne* about their proposed organization in her letter filed with the Court on August 1, 2024 (ECF No. 544). A true and accurate copy of that email chain is attached to FedEx's Rule 11 Memorandum as Exhibit G.

31. I asked Ms. Liss-Riordan and Mr. Abay whether LLR's intent was for the new complaints to contain only Plaintiffs who were previous opt-ins in either the *Claiborne* or *Roy* actions or if they also included entirely new plaintiffs. I also asked LLR whether the *Abner* complaint was intended to contain only former *Claiborne* opt-ins that did not participate in discovery in *Claiborne*. And I asked whether the *Brannon* case was intended to include only those *Claiborne* opt-ins who had participated in discovery in some way. After not receiving a response, I followed up again on September 20, 2024, and October 8, 2024. (*See* Ex. G.) As of the filing of this declaration, I have not received any sort of response from LLR to my inquiries.

32. On September 24, 2024, LLR filed an amended complaint in this case, which removed the 298 Plaintiffs from the case that LLR had previously asked FedEx to stipulate for

dismissal. FedEx conducted a search of 298 Plaintiffs in *Claiborne* and determined that all of them had been dismissed with prejudice there.

33. Based on FedEx's preliminary investigation, it appears that almost 700 *Abner* Plaintiffs were selected for some sort of discovery in *Claiborne*, more than half of which were included as part of LLR's request for scanner data with vehicle information but where the opt-ins did not also have to reciprocally participate.

**Documents from Internet Searches**

34. Attached to FedEx's Rule 11 Memorandum as Exhibit H is a true and correct copy of a public Facebook post by Cassandra Miller, a named Plaintiff in this case, that was located by conducting internet searches, under my supervision and direction, to try to determine what LLR said to former opt-ins about refiling their claims.

35. Attached to FedEx's Rule 11 Memorandum as Exhibit I is a true and correct copy of a public Facebook post by Harold Hall, a named Plaintiff in this case, that was located by conducting internet searches, under my supervision and direction, to try to determine what LLR said to former opt-ins about refiling their claims.

36. Attached to FedEx's Rule 11 Memorandum as Exhibit J is a true and correct copy of a form on LLR's website that was located, under my supervision and direction, after clicking the link in Harold Hall's public Facebook post (Ex. I).

**Additional Email Exchange**

37. On October 24, 2024, I traveled to LLR's office to take the deposition of their data analyst who provided a declaration and damages calculations for each of the 12 plaintiffs in *Claiborne*. The significant and substantial errors in her calculations and misuse of documents and data produced for these plaintiffs became apparent so early in the deposition that the parties

agreed to stop the deposition so that LLR could have the entire report and damages calculations redone.

38.     In the aftermath, Ms. Liss-Riordan, by email, began to blame FedEx for the errors in LLR's data analyst's report as the plaintiffs' "joint employer" that should have kept records (obviously an issue that is hotly contested). Ms. Liss-Riordan stated that they made "reasonable estimates based upon a ridiculous amount of data to have to go through to calculate employees' pay. . . ." A true and correct copy of excerpts of that email exchange is attached as Exhibit M to FedEx's Rule 11 Memorandum.

39.     But, this "ridiculous amount of data" was simply what was produced for the 12 plaintiffs: paystubs the plaintiffs had produced (none of whom produced complete sets), the plaintiffs' depositions, and the summary scanner and vehicle data LLR had requested from FedEx.

I declare under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, in Denver, Colorado.

_____
Jessica G. Scott